UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHRISTOPHER WEBER,**

    **Plaintiff,**

v.

                                  Case No. 8:23-cv-2723-AAS

**MARTIN J. O'MALLEY,**
**Commissioner of the Social**
**Security Administration,**

    **Defendant.**
_____/

## ORDER

Christopher Weber requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. Section 405(g). (Doc. 16). After reviewing the record, including the transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the memoranda the parties submitted, the Commissioner's decision is **REMANDED** for further consideration.

**I.    PROCEDURAL HISTORY**

Mr. Weber applied for DIB and SSI on in January 2020, alleging a disability onset date of May 10, 2002. (Tr. 121–22, 134–35, 151, 164, 403–04,

1

405–11). Disability examiners denied Mr. Weber's application initially and after reconsideration. (Tr. 148, 149, 189, 190). Mr. Weber requested a hearing, which was held in December 2021. (Tr. 240–64). Following the hearing, the ALJ issued an unfavorable decision to Mr. Weber. (Tr. 194–204). In June 2022, the Appeals Council remanded the matter to the ALJ for additional consideration. (Tr. 210–15).

Another hearing before the ALJ was held in February 2023. (Tr. 39–70). On March 2, 2023, the ALJ issued another decision finding Mr. Weber not disabled. (Tr. 18–30). The Appeals Council denied Mr. Weber's request for review, making the ALJ's decision final. (Tr. 1–7). Mr. Weber now requests judicial review of the Commissioner's decision. (Doc. 1).

## II.  NATURE OF DISABILITY CLAIM

### A.  Background

Mr. Weber was 42 years old at the time he applied for social security disability benefits, and 23 years old on his alleged onset date of May 10, 2002. (Tr. 121, 134, 150, 163). Mr. Weber has a GED but no past relevant work. (Tr. 29, 83, 442, 707, 737).

### B.  Summary of the Decision

The ALJ must follow five steps when evaluating a claim for disability.[1]

---

[1] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 416.920(a)(4).

20 C.F.R. § 416.920(a). First, if a claimant is engaged in substantial gainful activity,[2] he is not disabled. 20 C.F.R. § 416.920(b). Second, if a claimant has no impairment or combination of impairments that significantly limit his physical or mental ability to perform basic work activities, he has no severe impairment and is not disabled. 20 C.F.R. § 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, he is not disabled. 20 C.F.R. § 416.920(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[3] *Id.* Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from performing work that exists in the national economy, he is not disabled. 20 C.F.R. § 416.920(g).

      The ALJ determined Mr. Weber had not engaged in substantial gainful activity since May 10, 2002, the alleged onset date. (Tr. 21). The ALJ found Mr.

---

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. § 416.972.

[3] A claimant's RFC is the level of physical and mental work he can consistently perform despite his limitations. 20 C.F.R. § 416.945(a)(1).

Weber has these severe impairments: degenerative disc disease; obesity; sleep apnea; hypertension; GERD; sacroiliitis; tennis elbow/cubital tunnel syndrome; fibromyalgia; depression; and anxiety. (*Id*.). However, the ALJ concluded Mr. Weber's impairments or combination of impairments failed to meet or medically equal the severity of an impairment in the Listings. (*Id).*

The ALJ found Mr. Weber had an RFC to perform a light work,[4] with these additional limitations:

> [L]ift 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours per day; sit 6 hours per day; never climb ladder/rope/scaffold; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, crawl' frequently reach, handle, finger, feel; must avoid loud noises, vibration, hazardous machinery and heights; can understand, remember, and carry out routine and repetitive instructions and tasks; can manage or deal with occasional changes in work routines settings or duties; cannot perform work requiring a specific production rate or pace, such as assembly lines; can have occasional interaction with the public, coworkers, and supervisors; and can maintain attention and concentration for 2 hours at a time, but does require the standard morning, lunch, and afternoon breaks.

(Tr. 24).

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b).

Based on these findings and the testimony of a vocational expert, the ALJ determined Mr. Weber could perform jobs that exist in significant numbers in the national economy. (Doc. 29). Specifically, Mr. Weber can perform the jobs of marker, routing clerk, and mail clerk. (Tr. 30). As a result, the ALJ concluded Mr. Weber was not disabled. (*Id.*).

### III.  ANALYSIS

#### A.  Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not

make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B.     Issue on Appeal

Mr. Weber argues the ALJ erred in finding his urinary frequency and incontinence was non-severe and did not warrant specific limitations in the RFC. (Doc. 16, pp. 3–7). In response, the Commissioner argues the ALJ properly considered Mr. Weber's urination frequency and incontinence, found them non-severe, and excluded specific limitations on this issue in the RFC. (Doc. 20, pp. 5–11).

Mr. Weber argues the ALJ mischaracterized the evidence when he noted Mr. Weber had "some treatment" for urinary incontinence and that Mr. Weber "declined further treatment." (Tr. 21). In support, Mr. Weber cites to multiple records record evidencing his urinary incontinence. (Doc. 16, pp. 5–7). For example, on April 29, 2021, Mr. Weber was seen at Advanced Urology complaining of urinary frequency, weak, urine stream, and urinary urgency. (Tr. 911). On June 17, 2021, Mr. Weber underwent a Percutaneous tibial nerve

stimulation (PTNS) procedure. (Tr. 919). On June 24, 2021, July 1, 2021, and July 8, 2021, Mr. Weber underwent additional PTNS procedures. (Tr. 921-27). On July 15, 2021, it was noted that Mr. Weber did not have significant benefit from the PTNS procedures and was still having intermittent urinary frequency and weak stream. (Tr. 928). On October 14, 2021, it was noted Mr. Weber had refractory urinary frequency and had not had a response to medication or PTNS. (Tr. 930). On November 15, 2022, Dr. Benston Johnson noted Mr. Weber's chronic issues with incomplete bladder emptying. (Tr. 91). Mr. Weber also testified about his urinary incontinence at the hearing, stating he had to urinate every 40 minutes. (Tr. 80–81). Thus, Mr. Weber properly alleged urinary incontinence as a basis for his disability, and the ALJ was under a duty to consider the impairment. *See Duffy*, 736 F. App'x at 837–38.

At step two of the sequential evaluation process, the ALJ found that Mr. Weber's urinary incontinence was not a severe impairment. (Tr. 21). At step four, the ALJ found Mr. Weber had the RFC to perform light work with additional exertional and non-exertional limitations. (Tr. 24). In assessing a claimant's RFC, the ALJ must consider the limitations imposed by all of an individual's impairments, including those that are not severe. Social Security Regulation (SSR) 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996). "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with

7

limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Id.*; *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (per curiam) ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC.").

The Eleventh Circuit in *Schink* found that the ALJ's decision was not supported by substantial evidence because the ALJ did not consider the claimant's mental impairments when evaluating the RFC, despite stating that he "considered all symptoms." *Schink*, 935 F.3d at 1269. Although the ALJ in *Schink* determined that the claimant's mental impairments were non-severe, the ALJ was still required to consider them when assessing the claimant's RFC. *Id.*; *see also Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1064 (11th Cir. 2021) (finding that the ALJ's decision was not supported by substantial evidence despite stating that he "considered all symptoms" when the decision fails to mention all of the claimant's impairments in the RFC assessment).

Similarly, here, although the ALJ stated that he "considered all symptoms," the ALJ's failure to account for all Mr. Weber's impairments, both severe and non-severe, in the RFC determination proves otherwise. Notably, the Regulations specify that consideration of all impairments in combination when assessing the claimant's RFC is important because a non-severe impairment in isolation may not significantly impact an individual's ability to do basic work activities but in combination with other impairments may be

8

critical to the outcome of a claim. SSR 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996). Indeed, the ALJ did not mention Mr. Weber's urinary incontinence in his RFC analysis. (*See* Tr. 24–29). Although the ALJ is not required to cite to every piece of evidence contained in the record in determining an RFC, the ALJ is required to provide a sufficient rationale linking the record evidence to the RFC determination. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005) (citing *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

Based on the ALJ's reasoning contained in the RFC analysis, it is not clear that he considered Mr. Weber's urinary incontinence issues. This court recognizes the ALJ's extensive review and consideration of Mr. Weber's severe impairments in the RFC determination; however, without reference to Mr. Weber's urinary impairment, this court cannot conclude that the ALJ's RFC assessment is supported by substantial evidence.

## IV. CONCLUSION

For the reasons stated, the Commissioner's decision is **REMANDED**. The Clerk is directed to enter judgment for Mr. Weber and close the case.

**ORDERED** in Tampa, Florida on October 28, 2024.

_____
AMANDA ARNOLD SANSONE
United States Magistrate Judge

9